DECISION AND JUDGMENT ENTRY
Tracy Cade Shepard appeals the judgment of the Lawrence County Court of Common Pleas holding that the Fairland Local School District Board of Education ("the Board") acted properly when it failed to renew her limited teaching contract. She assigns the following error:
 THE COURT BELOW ERRED IN CONCLUDING THAT APPELLANT FAILED TO MEET HER BURDEN OF PROOF IN THE APPEAL OF THE NON-RENEWAL OF HER LIMITED TEACHING CONTRACT.
Finding merit in Ms. Shepard's sole assignment of error, we reverse the judgment below and remand this case to the trial court.
Ms. Shepard was employed by the Board as a music teacher under a limited contract for the 1997-1998 school year. During this period, a Collective Bargaining Agreement ("CBA") between the Board and the Fairland Association of Classroom Teachers, OEA/NEA ("the Association") was in effect.
On December 12, 1997, John Lewis observed Ms. Shepard's classroom and prepared a written report. The report indicated that the students took a test, were given information to record in their notebooks, and were given scores from a previous test. Mr. Lewis noted that class behavior was good. He also indicated that he had made informal observations throughout the year while standing in the hallway near the music room and that "[o]n several occasions it appeared that [the] students were not involved in any type of music class activities." Mr. Lewis also noted that the last lesson plans turned in by Ms. Shepard were from September 29th to October 3rd.
On February 12, 1998, Ed Capper met with Ms. Shepard, observed her class and prepared a written report the following day. Mr. Capper noted that the lesson seemed "a bit hurried and unfocused." He also made several other criticisms. Mr. Capper stated that more focus on the details was needed, that too much material was covered in one period, that expectations were too low, that student performance levels were not up to Fairland standards, that students were "goofing around," and that the number of students in the class had dropped from thirty or forty to twenty.
On February 26, 1998, Mr. Lewis again observed Ms. Shepard. Mr. Lewis noted that there were music activities throughout the period and that everyone participated. However, he also noted that a few students were being disruptive which hindered class participation. Mr. Lewis concluded that discipline needed improvement.
In March 1998, the treasurer of the Board notified Ms. Shepard that the Board did not intend to renew her limited teaching contract. Ms. Shepard requested a meeting with the Board. On April 6, 1998, Ms. Shepard appeared before the Board and argued that her contract should be renewed. The following day, Ms. Shepard was notified that the Board had not changed its position and her contract would not be renewed.
Ms. Shepard filed a complaint in the Lawrence County Court of Common Pleas alleging that the non-renewal of her contract was improper because the correct teacher evaluation process had not been followed. Both parties stipulated to the facts and submitted briefs. The trial court entered judgment in favor of the Board. Ms. Shepard filed a timely appeal from this judgment entry.
A teacher has the right to appeal a school board's decision not to re-employ her to the court of common pleas. However, that review is narrowly limited; the trial judge cannot reverse the Board's decision on the merits or order reinstatement or re-employment of the teacher unless particular procedures have been violated. R.C. 3319.11(G)(7). We are limited by these same standards and review the trial court's decision denovo to determine whether the Board complied with the appropriate evaluation procedures during its review of Ms. Shepard's teaching performance.
Article 7 of the CBA states that "[a]ll bargaining unit members whose limited contracts are set to expire at the end of the contract year shall be evaluated in accordance with the provisions of Sections 3319.11 and3319.111 of the Ohio Revised Code." R.C. 3319.11(E) provides that a teacher employed under a limited contract is considered re-employed unless evaluation procedures have been complied with pursuant to division (A) of section 3319.111 of the Revised Code and the employing board, acting upon the superintendent's written recommendation that the teacher not be reemployed, gives such teacher written notice of its intention not to reemploy such teacher on or before the thirtieth day of April. Ateacher who does not have evaluation procedures applied in compliancewith division (A) of section 3319.111 of the Revised Code or who does not receive notice of the intention of the board not to reemploy such teacher on or before the thirtieth day of April is presumed to have accepted suchemployment unless such teacher notifies the board in writing to the contrary on or before the first day of June, and a written contract forthe succeeding school year shall be executed accordingly.
Any teacher receiving a written notice of the intention of a board not to reemploy such teacher pursuant to this division is entitled to the hearing provisions of division (G) of this section. (Emphasis added.)
R.C. 3319.111 provides that:
 (A) Any board of education that has entered into any limited contract * * * shall evaluate such a teacher in compliance with the requirements of this section in any school year in which the board may wish to declare its intention not to re-employ the teacher * * *.
This evaluation shall be conducted at least twice in the school year in which the board may wish to declare its intention not to re-employ the teacher. One evaluation shall be conducted and completed not later than the twenty-fifth day of January. One evaluation shall be conducted and completed between the tenth day of February and the first day of April and the teacher being evaluated shall receive a written report of the results of this evaluation not later than the tenth day of April.
* * *
(B) Any board of education evaluating a teacher pursuant to this section shall adopt evaluation procedures that shall be applied each time a teacher is evaluated pursuant to this section. These evaluation procedures shall include, but not be limited to:
 (1) Criteria of expected job performance in the areas of responsibility assigned to the teacher being evaluated;
 (2) Observations of the teacher being evaluated by the person conducting the evaluation on at least two occasions for not less than thirty minutes on each occasion;
 (3) A written report of the results of the evaluation that includes specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements.
* * *
In Farmer v. Kelleys Island Bd. of Edn. (1994), 69 Ohio St.3d 156, paragraph two of the syllabus, the Supreme Court of Ohio held that "R.C.3319.111(B) defines the evaluation procedures required under former R.C.3319.111(A)." Therefore, a proper evaluation under R.C. 3319.111(A) contains all the elements delineated in R.C. 3319.111(B). Id.
Ms. Shepard argues that she was not properly evaluated under R.C.3319.111(B) because the evaluations did not contain the criteria of expected job performance, specific recommendations regarding desired improvements, or the means by which she could obtain assistance in making such improvements. Further, she argues that she was not observed two times for each written evaluation. Ms. Shepard asserts that because of these procedural violations, she is entitled to reinstatement.
The Board does not argue that it complied with the evaluation procedures in R.C. 3319.111. Rather, the Board contends that Article 8.02 of the CBA deals specifically with the non-renewal of limited contracts. Article 8.02 states that:
 A. All non-tenured teachers being considered for non-renewal shall be evaluated a minimum of two (2) times.
 B. Before the Board takes final action not to renew a teacher's limited contract, the Board shall direct the Treasurer of the Board to give the teacher written notification of such intention on or before March 24 of the school year involved. Such written notification shall contain in writing the reasons for the Board's intended action.
 C. The teacher, upon receipt of such notice of intention to non-renew, shall have until April 1 of the school year involved to submit a written request to the Treasurer of the Board for an informal appearance before the Board. If such an appearance is requested, the Board shall notify the teacher of the time and place of his/her meeting with the Board.
 D. At the meeting, the teacher shall have the opportunity to present reasons as to why his/her contract should be renewed. The Board shall then exercise its best judgment and good faith according to the law in considering its decision. The teacher may elect to be represented at the hearing provided for herein by one representative of his/her choice.
* * *
The Board argues that Articles 7 and 8.02 cannot be harmonized because they contain different timelines. Therefore, Article 8.02 must be followed because it is more specific and the Board is not required to comply with R.C. 3319.111.
In Naylor v. Cardinal Local School District Bd. of Edn. (1994),69 Ohio St.3d 162, paragraph one of the syllabus, the Supreme Court of Ohio held that "R.C. 3319.11 and 3319.111 are remedial statutes that must be liberally construed in favor of teachers." The Court further noted that "[u]nless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract." Id. at paragraph two of the syllabus.
In Galat v. Hamilton City School District Bd. of Edn. (Oct. 26, 1998), Butler App. No. CA98-01-017, unreported, the Twelfth District Court of Appeals distinguished Naylor. The court noted that the bargaining agreement in Naylor was entered into before R.C. 3319.111 was effective, whereas in Galat the agreement was entered into after the effective date of the statute. The court held that a provision in the contract stating that "the provisions of the Master Contract supersede and take precedence over any provisions of the Ohio Revised Code which may be contrary to the provisions of the Master Contract," in combination with a teacher evaluation procedure more detailed from that in R.C. 3319.111, was sufficient to override the requirements of R.C. 3319.111. Id.
The CBA at issue here contains a similar provision. Article 36.01 provides that the CBA "supersedes and replaces all pertinent statutes, rules and regulations as provided by the express provisions of this Agreement." However, it also states that "[w]here this Agreement is silent or the law is not modified by provisions of the Agreement, applicable law shall prevail."
Unlike Galat, the CBA specifically incorporates R.C. 3319.11 and 3319.111 into the agreement. Furthermore, while Article 8.02(A) provides that each teacher under a limited contract must be evaluated at least two times, the agreement does not provide any specifics regarding what the evaluation must include or when it must be completed. Therefore, the agreement at issue here differs significantly from that in Galat.
In Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn.
(1994), 68 Ohio St.3d 288, the Supreme Court of Ohio discussed the analysis required when inconsistencies arise between collective bargaining agreements and state or local law. First, the court must "examine the relevant provision of the collective bargaining agreement and the relevant state or local law, and ask whether the agreement and the law conflict." Id. at 291. Second, if there is a conflict, the court must determine "whether the conflicting law pertains to one of the areas listed in R.C. 4117.10(A)." Id. If the answers to both questions are affirmative, the conflicting provision in the agreement is unenforceable and the law prevails. Id.
Therefore, we must first determine whether Article 8.02 is in conflict with R.C. 3911.111. Article 8.02 indicates that each teacher under a limited contract must be evaluated on two occasions but does not provideany specifications regarding the number of observations required per evaluation, the length of the observations, the content or form of the evaluations, or the deadlines for the completion of the evaluations. The Board is correct in its assertion that a conflict exists between the deadlines in the statute and in the CBA for notification by the Board of intent not to renew and for a request by the teacher for an appearance before the Board. However, Ms. Shepard does not contend that her notice of non-renewal was untimely or that there were any discrepancies relating to her appearance before the Board or its timing. Therefore, this inconsistency is not relevant to our analysis.
We conclude that R.C. 3319.111 and Article 8.02 of the CBA are consistent as they relate to the evaluation procedure which must be followed when a determination is made not to renew a limited teaching contract. While both provisions state that two evaluations must be performed, only R.C. 3319.111 delineates evaluation procedures that must be followed.
Further, the Board's argument ignores an important principle of contract law. A court must construe a contract such that every clause is given effect and assumed to have been inserted for some purpose. 18 Ohio Jurisprudence 3d (1980) 43, Contracts, Section 157. If we adopted the Board's position, we would be completely ignoring Article 7 of the CBA which specifically incorporates R.C. 3319.111. While the Board's contention that specific provisions control over general provisions is correct, this contract principle does not support a finding in the Board's favor either. Article 7, which adopts the specific evaluation procedures outlined in R.C. 3319.111, is undoubtedly more specific than the very general language of Article 8.02 which only requires that two evaluations be conducted.
In sum, based on basic principles of contract law, as well as the statutes and case law discussed above, we conclude that the Board was required to follow the evaluation procedures outlined in R.C. 3911.111 before refusing to renew Ms. Shepard's limited teaching contract under R.C. 3911.11. Consequently, we must determine whether the evaluations of Ms. Shepard complied with the statute.
First, Ms. Shepard argues that the evaluations were insufficient because they did not include any specific recommendations regarding any needed improvements or any means by which she could obtain assistance in making the recommended improvements. We agree. The first evaluation by Mr. Lewis did not make any recommendations or direct Ms. Shepard toward any resources from which to obtain guidance. The evaluation by Mr. Capper contained a section entitled "Recommendations" but the items listed appear to be criticisms of Ms. Shepard's teaching style rather than recommendations on how to improve it. For example, Mr. Capper indicated that "[s]tudent performance levels are not up to Fairland standards." However, at least some of the items listed could be considered recommendations. Nonetheless, no means of improvement were suggested. In the final evaluation, Mr. Lewis simply noted that discipline needed improvement but made no specific recommendations on how to improve it and suggested no resources.
Next, Ms. Shepard claims that she was not observed two times for each written evaluation as required by R.C. 3319.111(B)(2). Again, Ms. Shepard is correct. As the Supreme Court of Ohio noted in Farmer v. KelleysIsland Bd. of Edn. (1994), 69 Ohio St.3d 156, 159, R.C. 3319.111(B)(2) requires a two-to-one ratio of observations to written evaluations. Here, Ms. Shepard was observed on three different occasions and given three written evaluations. Clearly, this does not meet the two-to-one ratio required.
Lastly, Ms. Shepard argues that the Board failed to comply with R.C.3319.111(B)(1) which requires that it indicate the "[c]riteria of expected job performance in the areas of responsibility assigned to the teacher being evaluated." No such criteria are included in the evaluation materials or anywhere else in the record. Therefore, we conclude that the Board failed to comply with this requirement as well.
In sum, we find that the Board failed to comply with the evaluation requirements of R.C. 3319.111(B)(1), (2) and (3). As noted in Farmer,supra, at 159, a failure to comply with the requirements listed in R.C.3319.111(B) constitutes a failure to comply with R.C. 3319.111(A). This failure constitutes a procedural ground upon which we reverse the Board's decision not to re-employ Ms. Shepard under R.C. 3319.11(G)(7). When a board of education improperly terminates a teacher by failing to comply with the evaluation procedures required by R.C. 3319.111(A), a court should order the board to re-employ the teacher. Id. Furthermore, a teacher whose contract is not properly renewed is also entitled to back pay which accumulates from the time when the board improperly chose not to renew the teacher's contract. Id.
Appellant's sole assignment of error is sustained. We reverse the judgment of the trial court and remand this case for further action consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion
 __________________________ William H. Harsha, Judge